**Entered on Docket**
**December 23, 2005**
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

**Signed: December 22, 2005**

_____
**LESLIE TCHAIKOVSKY**
**U.S. Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re                                    No. 04-41044 T
                                         Chapter 11
QMECT, INC., etc.,

    Debtor-in-Possession.
_____/

**MEMORANDUM OF DECISION RE CASH COLLATERAL MOTION**

    The above-captioned debtor's (the "Debtor") motion for authorization to use cash collateral for the first six months of 2006 came on for hearing on December 19, 2005. The Debtor also requested a determination that the senior liens on the Debtor's personal property were undersecured and thus not entitled to post-petition interest. If the Court were to so determine, the Debtor requested a reduction in the adequate protection payments being made to the senior lender on a monthly basis as well as disgorgement of the overpayments previously made. Finally, the Debtor sought authorization to pay the Debtor's and the Creditors' Committee's professionals a pro rata share of $100,000 and $7,500

per month thereafter with respect to allowed fees and expenses.[1] For the reasons stated below, the Debtor is authorized to use cash collateral in accordance with its budget for the months of January and February 2006. The Court will determine whether to permit the Debtor's use of cash collateral thereafter after the trial is concluded in A.P. No. 04-4190 AT.

**DISCUSSION**

A debtor may only use a secured creditor's cash collateral if the secured creditor consents or the use will not deprive the secured creditor of adequate protection of its interest in its collateral. 11 U.S.C. § 363(e). The Debtor has two secured creditors, referred to herein as Burlingame and Burlingame Funding. Burlingame and Burlingame Funding are affiliates. The liens securing the claims held by Burlingame are junior to the liens securing the claims held by Burlingame Funding. The claims held by Burlingame Funding were originally held by Comerica Bank-California. They were purchased by Burlingame and then transferred to Burlingame Funding shortly before the bankruptcy was filed.

Neither of the two secured creditors in this case consent to the use. To the contrary, they strenuously object. Thus, the

---

[1] The Court has allowed on an interim basis the fee applications of the Debtor's counsel and the Creditors' Committee counsel. The Court denied approval of the Debtor's accountant's fee application without prejudice due to formatting problems.

Court may only authorize the use if it finds that the secured creditors' positions are adequately protected.

Adequate protection may be provided by an "equity cushion." This phrase means that the value of the secured creditor's collateral is sufficiently in excess of the secured creditor's claim that the secured claim is sure to be paid in full at some time in the future, including accrued interest. It is undisputed that the secured claim of Burlingame, the holder of the junior liens on the Debtor's assets, is undersecured. Thus, Burlingame's liens are not adequately protected by an equity cushion.

Adequate protection may also be provided by periodic payments and/or replacement liens in previously unencumbered collateral. This is the adequate protection offered by the Debtor. The Debtor has been making payments of $14,000 to Burlingame Funding which is the amount of the interest accruing on the claims secured by the senior liens. This prevents accruing interest on the senior liens from rendering the junior liens more unsecured even if the value of the collateral base remains stable. In addition, both secured creditors are offered replacement liens on the newly acquired collateral: i.e., inventory and accounts receivable. The Debtor contends that these two forms of protection are adequate.

The Debtor concedes that, given the seasonal nature of its business, it will be operating on a negative cash flow basis for the next six months. However, the Debtor contends that the secured position entitled to adequate protection is the position at the time the bankruptcy case was filed, not at the time the

3

motion for authorization to use the cash collateral is made. The Court agrees. The Debtor contends that the fair market value of the secured creditors' collateral, both the real property and the personal property, has increased from the petition date to the present date. The Debtor bases this contention on a valuation of its assets on a piecemeal basis, albeit based on their fair market value.

The secured creditors contend that, because they hold "blanket liens" on all the Debtor's assets, the value of their collateral is the value of the Debtor's business sold as a "turn-key" operation. They based this contention on <u>In re Kim</u>, 130 F.3d 863 (9th Cir. 1997). The secured creditors presented an expert witness at the hearing on the motion. The witness testified that, using the Debtor's cash flow figures, the value of the Debtor's business sold as a "turn-key" operation had decreased by over a million dollars since the filing of the petition. The Court found the witness's testimony completely persuasive.

The Court has previously stated that, if the secured creditors hold a "blanket lien," <u>In re Kim</u>, 130 F.3d 863 (9th Cir. 1997) requires the secured creditors' collateral to be valued based on a sale of the business as a "turn-key" operation. The Court has not previously determined whether the secured creditors hold "blanket liens." In a related adversary proceeding, the Court denied the Creditors' Committee's motion for a summary adjudication that Burlingame Funding did not have a "blanket lien."

The Court previously held that a secured creditor could assert a "blanket lien" even though it lacked a perfected security interest in some of the Debtor's assets if the assets could be easily replaced without any disruption of the business operations. For example, the secured creditors have conceded that they do not hold perfected security interests in the Debtor's trucks.

Burlingame Funding executed lien releases with respect to certain items of leased equipment (the "Released Equipment"). However, it does hold a perfected security interest in the leases of the Released Equipment and it also has a security interest in the Debtor's real property. Thus, if the leases are "true leases" or if the Released Equipment are fixtures in the real property, Burlingame Funding's lack of a perfected security interest in the Released Equipment would not deprive it of a "blanket lien."

However, the Court has not yet determined whether the leases are "true leases" or the Released Equipment are "fixtures." One of the items of Released Equipment is the "grid flooring." If the "grid flooring" is not subject to Burlingame Funding's security interest, Burlingame Funding cannot claim a "blanket lien," if its secured position is viewed in isolation from the interests of Burlingame.

However, as the secured creditors have noted, Burlingame did not execute releases of its liens with respect to the Released Equipment. Burlingame and Burlingame Funding contend that, as affiliates, they may combine their secured positions to claim a "blanket lien" on the Debtor's assets. The Debtor disagrees. It

5

contends that, having chosen to hold the claims in question through separate entities, they may not now disregard that separateness simply because it benefits them.

The Court agrees that the liens may be combined. The Debtor's position ignores reality. As a functional matter, Burlingame and Burlingame Funding may act in concert. Alternatively, Burlingame Funding could transfer its claims back to Burlingame. Thus, for all practical purposes, they hold a "blanket lien" on the Debtor's assets. Having so concluded, as noted above, the Court also concludes that the value of the secured creditors' collataral must be based on the value of the business as a whole, sold as a "turn-key" operation. Furthermore, the Court concludes, based on the testimony provided by the secured creditors' expert, that the value of the Debtor's business has declined substantially since the inception of the case.

Nevertheless, the Court concludes that the Debtor should be authorized to use the secured creditors' cash collateral for the next two months for several reasons. First, the Court is in the middle of a trial in which the Debtor asserts counterclaims against the secured creditors which may equal or exceed the amount of the secured claims. Alternatively, they may offset the secured creditors' claims sufficiently that the value of the Debtor's business would provide an equity cushion for any remaining debt. The Court is unwilling to assume, mid-trial, that the Debtor will not prevail in its claims. The Court has previously denied the secured creditors' motion for summary judgment in their favor on

6

those claims, having concluded that they present material factual issues.

Second, the secured creditors concede that they do not wish the Debtor to cease operating. They believe that the Debtor's business has more value as a going concern than its assets would have after business has ceased. They asked that the Court not only deny use of cash collateral but also grant relief from the automatic stay sua sponte although no such motion was on file. The Court declined to do so.

If the Debtor does not prevail sufficiently on its counterclaims to extinguish or sufficiently reduce the secured creditors' claims to change the Court's adequate protection analysis, it will still need to use cash collateral to continue to operate the business so that the secured creditors may exercise their rights in such a way as to minimize any disruption to the Debtor's business. The Court does not wish a motion for relief from stay to be filed before the conclusion of the trial. Unless the Debtor indicates that the motion will not be opposed, the Court will not permit it to be noticed on an ex parte basis. In addition, even if the Debtor does not prevail on its counterclaims, it is still possible that competent evidence can be provided showing that the value of the real property has increased as much as the going concern value of the business has decreased.

The Debtor offered the opinion of its principal officer, Fred Koelling ("Koelling"), that the value of the real property had increased by approximately a million dollars during the case.

7

However, the Court did not find this testimony persuasive. Koelling based his opinion on a sale of nearby real property. However, there was insufficient detail concerning the nature of that real property to permit the Court to conclude that the real property was sufficiently comparable to the Debtor's real property.

On the other hand, the Court did not find the testimony of the secured creditors' real estate appraiser persuasive either. Their appraiser testified that the value had not increased at all since the inception of the case (or shortly thereafter when the Court valued it at $2.5 million). The Court finds this testimony implausible based on its general knowledge of market trends in the Bay Area during the period in question. However, it has no competent evidence that the real property has increased in value and if so, by how much.

The Debtor's two other requests are denied. The Debtor's contention that the secured claim of Burlingame Funding in the Debtor's personal property is undersecured uses a liquidation value methodology. The Court concludes that this methodology is improper where the Debtor proposes to retain the personal property and use it in its business. The Court is also unable to find at present that the secured creditors' position would be adequately protected notwithstanding the payment of the Debtor's professionals.

**CONCLUSION**

The Debtor's motion for use of cash collateral is granted in part and denied in part. The Debtor is authorized to use the cash collateral in accordance with its budget for the months of January and February 2006 except that it may not use cash collateral to pay any professional fees. The Debtor's request for a reduction in the adequate protection payments being made to Burlingame Funding and for disgorgement of a portion of the amounts previously paid is denied. The Debtor's request for authorization to pay $100,000 pro rata on the allowed claims of the Debtor's professionals is also denied. Counsel for Burlingame and Burlingame Funding is directed to submit a proposed form of order in accordance with this decision.

END OF DOCUMENT

```
 1                          COURT SERVICE LIST
 2    Paul E. Manasian
 3    Manasian & Rougeau, LLP
      400 Montgomery St., Ste. 1000
 4    San Francisco, CA 94104

 5    Tobias S. Keller
      Pachulski, Stang, Ziehl, Young,
 6      Jones & Weintraub P.C.
      Three Embarcadero Center, Ste. 1020
 7    San Francisco, CA 94111-4023

 8    Robert R. Moore
      Allen Matkins Leck Gamble & Mallory LLP
 9    Three Embarcadero Center, 12th Floor
      San Francisco, CA 94111
10
      Philip J. Nicholsen
11    Law Offices of Philip J. Nicholsen
      221 Main St., #740
12    San Francisco, CA 94105

13

14

15

16

17

18

19

20

21

22

23

24

25

26
```

10

Case: 04-41044   Doc# 451   Filed: 12/22/05   Entered: 12/23/05 10:44:04   Page 10 of 10