**Entered on Docket
June 02, 2006**
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

**Signed: June 02, 2006**



_____
**LESLIE TCHAIKOVSKY
U.S. Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re                                             No. 04-41044 T
                                                  Chapter 11
QMECT, INC., etc.,

    Debtor-in-Possession.
_____/

**MEMORANDUM OF DECISION RE USURY ISSUE**

    In their trial brief filed in connection with the final evidentiary hearing on the third motion for relief from the automatic stay filed by Burlingame Capital Partners II, L.P. ("Burlingame") and Electrochem Funding, LLC ("Burlingame Funding")(collectively "Lenders"), Qmect, Inc. ("Qmect") and the Official Creditors' Committee ("Committee") asserted that the loans made by the Burlingame to Qmect were usurious. It is undisputed that the rate of interest charged by Burlingame would be usurious if the usury laws applied to the loans. On May 24, 2006, the Court heard evidence pertaining to whether the usury laws applied.

    At the conclusion of the hearing, the Court set a briefing schedule for additional briefing on the law applicable to this issue. Those briefs have now been filed, and the Court has reviewed them. The Court has also conducted its own research. Based on the evidence

and argument presented and on the Court's own research, the Court now concludes that the loans were exempt from the usury laws. The basis for the Court's conclusions is set forth below.[1]

It is undisputed that Burlingame is a "finance lender" within the meaning of FC § 22009.[2] As such, it is governed by the California Finance Lenders Law, FC §§ 22000 et seq. (the "FC Division 9"). It is also undisputed that Burlingame's loans to Qmect were commercial loans. FC § 22502 provides that a "commercial loan" means a loan of $5,000 or more, the proceeds of which are intended for a use other than personal, family or household purposes.

FC Division 9 covers both commercial and consumer transactions. However, not every provision of the division applies to both types of

---

[1] As the Court has frequently reminded the parties, because this determination is being made in connection with a motion for relief from stay, it does not constitute a summary adjudication of the issue for collateral estoppel or res judicata purposes. The Court makes the determination only so as to decide whether or not to grant the Lenders relief from the automatic stay with respect to their remaining collateral.

[2] The Court was under the impression until reading the Committee's reply brief that it was undisputed that Burlingame had a license that exempted it from the usury laws at the time the loans were made. However, in the Committee's reply brief, the Committee asserted that Burlingame was not exempt from the usury laws because it agreed to make the loans before receiving its license. The Committee notes that Burlingame's license was not issued until June 28, 2001 while Burlingame and Qmect signed a term sheet earlier that month. The Court views this new assertion as a red herring. The Court has reviewed the record and has confirmed that the initial loan agreement was not signed and that no advance was made by Burlingame to Qmect until September 2001. Burlingame received its license well before that time. The Court does not view the signing of a term sheet as the making of a loan, particularly when the lender has not yet sought investors to fund the loan at the time the term sheet is signed.

2

transactions.  The provisions of FC Division 9 that are applicable to commercial loans are set forth in FC § 22001(c).  FC Division 9 consists of four chapters: Chapter 1 General Provisions, commencing with FC § 22000, Chapter 1 Consumer Loans, commencing with FC § 22200, Chapter 3 Commercial Loans, commencing with FC § 22500, and Chapter 4 Revocation and Penalties, commencing with FC § 22700. Section 22001(c) provides that Chapter 1 and Chapter 3 are applicable to commercial loans.  In addition, certain provisions of Chapter 4 are applicable to commercial loans: i.e., Article 1, commencing with FC § 22700 and Article 3, commencing with FC § 22780.[3]

FC § 22151 (a provision of Chapter 1) requires that a finance lender post its license conspicuously in the place of business authorized by the license.  Pursuant to FC § 22001(c), this provision is applicable to the loans made by Burlingame to Qmect. At the evidentiary hearing, Burlingame presented competent and persuasive evidence that it had complied with this requirement at the time it made the loans to Qmect.  Qmect presented no evidence to the contrary.

Section 22155 (also a provision of Chapter 1) provides that no finance lender may make a loan provided for under FC Division 9 at any other place of business unless (as applicable to this proceeding) the borrower requests that it be made elsewhere, either orally or in writing.  Based on the evidence presented, the Court concludes that the loans made by Burlingame to Qmect were not "made" at Burlingame's

---

[3]Not surprisingly, the provisions of Chapter 2 Consumer Loans are not applicable to commercial transactions.  See FC § 22001(c).

3

office within the meaning of this provision.  The Court was persuaded that, more likely than not, the loans were made either at Qmect's or Kids' Connections' offices or at the home of Burlingame's principals for the convenience of Qmect's principals.  However, the Court was not persuaded that, more likely than not, the loans were made there at the request of Qmect's principals, either oral or written.  More likely, the principals of Burlingame volunteered to come to Qmect or Kids' Connection or to permit Qmect's principals to come to their home.

From FC § 22001(c), it would appear that FC § 22155 is applicable to Burlingame's loans to Qmect.  However, Burlingame contends that it is not, citing FC § 22550.  FC § 22550 provides that FC § 22155, among other provisions, does not apply to commercial loans "if the provisions of...[the] section are not used for the purpose of evading...[FC Division 9]."  Based on the evidence presented, the Court finds and concludes that, more likely than not, the loan transactions were not conducted elsewhere for the purpose of evading FC Division 9.  The Court finds it more likely that the principals of Burlingame volunteered to make the loan somewhere other than at Burlingame's offices as a business courtesy.  Thus, the Court concludes that FC § 22155 does not apply to these loan transactions.[4]

---

[4] See West Pico Furniture Co. of Los Angeles v. Pacific Finance Loans, 2 Cal. 3d 594, 613 (1970)(licensed personal property broker retained usury exemption as to conditional sales contracts recharacterized as loans, no evidence of purpose of evasion of usury law having been presented).

4

Burlingame also argued that, even if either FC § 22151 or FC § 22155 had been violated, there is no private right of action for such violations with respect to commercial loans. Given its conclusion that FC § 22151 was not violated and that FC § 22155 is not applicable, the Court need not address this argument. The Court concludes that no oral argument is necessary with respect to this issue.

END OF DOCUMENT

```
 1                          COURT SERVICE LIST
 2   Paul E. Manasian
 3   Manasian & Rougeau, LLP
     400 Montgomery St., Ste. 1000
 4   San Francisco, CA 94104

 5   Robert R. Moore
     Allen Matkins Leck Gamble & Mallory LLP
 6   Three Embarcadero Center, 12th Floor
     San Francisco, CA 94111
 7
     Philip J. Nicholsen
 8   Law Offices of Philip J. Nicholsen
     221 Main St., #740
 9   San Francisco, CA 94105
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
                                                                    6
```