PAUL E. MANASIAN (SB No. 130855)
GREGORY A. ROUGEAU (SB No. 194437)
THOMAS T. HWANG (SB No. 218678)
MANASIAN & ROUGEAU, LLP
400 Montgomery Street, Suite 1000
San Francisco, California 94104
Telephone: (415) 291-8425
Facsimile: (415) 291-8426
Email: manasian@mrlawsf.com
Email: rougeau@mrlawsf.com
Email: hwang@mrlawsf.com

Attorneys for Debtor in Possession,
QMECT, INC.

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA – OAKLAND DIVISION

| | |
|---|---|
| In re:<br><br>QMECT, INC., a California corporation,<br>dba Electrochem,<br><br>        Debtor.<br><br><br>Employer's Tax Identification<br>No. 94-2923737 | ) Chapter 11<br>)<br>) Case No. 04-41044-LT11<br>)<br>) **DEBTOR QMECT, INC.'S**<br>) **MEMORANDUM OF POINTS AND**<br>) **AUTHORITIES IN SUPPORT OF**<br>) **MOTION FOR ISSUANCE OF STAY**<br>) **PENDING APPEAL**<br>)<br>) Date:      July __, 2006<br>) Time:     ____ a.m./p.m.<br>) Place:    Courtroom 201<br>)            1300 Clay Street<br>)            Oakland, CA<br>) Judge:   Hon. Leslie Tchaikovsky |

QMECT, INC. (the "Debtor"), the debtor and debtor in possession herein, hereby submits its Memorandum of Points and Authorities in support of its Motion for Stay Pending Appeal of the Final Order Granting Relief from Stay entered on July 14, 2006 (the "Final Order") which the Court granted Burlingame Capital Partners II, L.P. ("Burlingame") and Electrochem Funding, LLC ("Burlingame Funding," and collectively with Burlingame, the "Lenders") relief from the automatic stay with respect to the Debtor's post-petition accounts receivable, inventory, and cash (the "Post-Petition Assets").

///

Case: 04-41044   Doc# 587   Filed: 07/18/06   Entered: 07/18/06 09:16:27   Page 1 of 11

# I. <u>INTRODUCTION</u>

On June 26, 2006, the Court issued a Second Memorandum Decision whereby the Lenders were granted relief from the automatic stay with respect to the Debtor's Post-Petition Assets. On July 14, 2006, the Court entered a Final Order Granting Relief from the Automatic Stay (the "Final Order"). As set forth more fully in detail below, the Debtor intends to appeal the Final Order, specifically with respect to the Court's holding in the Memorandum Decision that the Lenders are entitled to foreclose upon the Debtor's post-petition cash and other assets. The Debtor believes that there is a substantial likelihood that the Debtor will succeed on the merits of its appeal based upon two independent grounds for reversing the Court's Memorandum Decision:

1.     The Lenders should not be permitted to assert both adequate protection liens granted pursuant to a cash collateral order <u>and</u> trace the proceeds of their pre-petition collateral; and

2.     Even if tracing is permitted, using the lowest intermediate balance rule, tracing the Lenders' proceeds from pre-petition accounts receivable and inventory can never result in the Lenders receiving liens in the post-petition accounts receivable, cash and inventory in an amount greater than the Debtor and the Committee acknowledge the Lenders should receive on account of the adequate protection liens.

Furthermore, the Debtor satisfies the other requirements for a stay. Absent a stay, the Debtor, and its creditors, may well suffer irreparable injury as the Lenders will foreclose on the Debtor's Post-Petition Assets and receive over $700,000 to which, the Debtor respectfully submits, the Lenders are not entitled. The Debtor believes that the funds in question will be disbursed by the Lenders and there is a significant risk that they could not be recovered even if the Debtor prevails on appeal. In contrast, the Lenders will not suffer any significant harm as the funds would remain in an interest-bearing account pending resolution of the appeal. Finally, the public interest would be unaffected by the stay, and would be best served by a determination of the fundamental issues raised by this case without the prospect of a pyrrhic victory by the Debtor. Specifically, the undisputed facts here - the Debtor borrowed money to remain in business; the

Case: 04-41044    Doc# 587    Filed: 07/18/06    Entered: 07/18/06 09:16:27    Page 2 of 11

borrowing allowed the Debtor to continue to operate post-petition successfully and to generate a significant excess profit for the estate; and now, the Debtor wants to return the cash collateral which was used to the Lenders, repay the post-petition loan, and retain the excess profit for the estate - militates for a stay pending the final determination of the Debtor's appeal.

## II. BACKGROUND

The Lenders filed their Third Motion of Burlingame Capital Partners II, L.P. and Electrochem Funding, LLC for Relief from the Automatic Stay, Including Relief to Foreclose Upon the Debtor's Cash, Deposit Accounts and Adequate Protection Payment Funds (the "Motion") on March 8, 2006, and the Debtor filed its Limited Opposition to the Motion on March 14, 2006. The Motion initially came on for hearing on March 16, 2006. On March 21, 2006, the Court entered its Order Granting Partial Relief from the Automatic Stay after Preliminary Hearing (the "March 21 Order"), which, among other things, granted the Lenders partial relief from the automatic stay imposed by 11 U.S.C. § 362 to foreclose their liens and security interests on all assets of the Debtor that were in existence when the bankruptcy petition was filed and on the Debtor's inventory. The Court did not grant relief from the automatic stay, at the time, to permit the Lenders to foreclose their security interests on any of the Post Petition Assets (other than inventory).

Thereafter, the Lenders, the Debtor and the Official Committee of Unsecured Creditors (the "Committee") filed further briefs, declarations and other supporting materials related to the remaining issues then still outstanding with respect to the Motion (i.e., the Lenders' entitlement to relief from the automatic stay as to the Post-Petition Assets). Following that briefing, on June 2, 2006, the Court also entered its first Memorandum of Decision re Proceeds Issue, wherein it found, inter alia, that "[I]f the proceeds of the pre-petition accounts receivable were commingled with the $150,000 loan made by a third party post-petition, the secured creditor will be required to trace its security interest in the proceeds of the pre-petition accounts into the post-petition assets using the lowest intermediate balance rule." *See* First Memorandum of Decision re Proceeds Memorandum, page 8, line 26 through page 9, line 4. On June 5, 2006, the Court

conducted a telephonic hearing wherein it directed the parties to set forth in briefs their positions as to what should occur if there had been commingling of the funds.

On June 9, 2006, the Lenders filed their Memorandum of Points and Authorities in Support of Response to Court's Memorandum of Decision Re Proceeds Issue. On June 16, 2006, the Debtor and the Committee filed their Joint Reply to Lenders' Response Re Proceeds Issue, and on June 20, 2006, the Lenders filed their Reply to the Debtor and Committee's Joint Reply. On June 26, 2006, the Court entered a Second Memorandum Decision re Proceeds Issue (the "Second Memorandum Decision"). In the Second Memorandum Decision, the Court ruled that the Lenders were entitled to foreclose upon the Post-Petition collateral. The Debtor intends to appeal the Court's ruling and now seeks a stay of the Final Order with respect only to the $345.885.31 in cash being held by the Lenders' counsel and $392,902 of the cash being held by the receiver appointed by the San Mateo Superior Court.

### III. ARGUMENT

Bankruptcy Rule 8005 provides in part:

> A motion for a stay of the judgment, order or decree of a bankruptcy judge . . . or for other relief pending appeal must ordinarily be presented to the bankruptcy judge in the first instance. . . . [T]he bankruptcy judge may suspend or order the continuation of other proceedings in the case under the Code or make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest.

In order to obtain a discretionary stay pending appeal under Bankruptcy Rule 8005, California courts have required that a moving party seeking the stay must establish the elements necessary to obtain a preliminary injunction: (1) a likelihood of success on the merits; (2) movant will suffer irreparable injury; (3) no substantial harm will come to the other parties; and (4) the stay will do no harm to the public interest. In re Wymer, 5 B.R. 802, 806 (9th Cir. 1980). [1] As

---

[1] In a recent decision, the District Court for the Northern District of California stated that the movant must satisfy each of the aforementioned elements. Yeganeh v. Sims (In re Yeganeh), 2006 U.S. Dist. LEXIS 32765, 11-12 (N.D. Cal. 2006); Id. (*citing* In re Irwin, 338 B.R. 839, 843 (E.D. Cal. 2006)). However, the majority of courts do not require that all of the elements be satisfied, but instead have held that "the more common approach . . . is to balance all factors in making this determination. "E.g., In re Dakota Rail, Inc., 111 B.R. 818 (Bankr. D. Minn. 1990);

Case: 04-41044   Doc# 587   Filed: 07/18/06   Entered: 07/18/06 09:16:27   Page 4 of 11

demonstrated below, the Debtor has met its burden of demonstrating that a discretionary stay is warranted under Bankruptcy Rule 8005.

**A.  The Debtor Has a Strong Likelihood of Success on the Merits of Its Appeal**

The Debtor acknowledges that it is inherently awkward to argue to the very court which entered the order being appealed that there is a "substantial likelihood" that the order by that court will be reversed on appeal. Clearly, the requirement that the appellant in the first instance seek a stay from the court which entered the order suggests that the appellant need not literally convince the court that the order will be reversed.  However, the Debtor submits that the extensive briefing which the Court requested and the several memoranda which the Court issued prior to entering the Final Order demonstrates that the issues on appeal are clearly subject to reasonable disagreement, and that the law in the Ninth Circuit is unresolved as to the specific questions which have been raised by the Debtor in opposition to the Motion.

The Debtor will not attempt to dissuade the Court from its holding in the Second Memorandum as the Court has already received extensive briefing from the parties prior to issuing the Second Memorandum Decision.   Rather the Debtor will briefly summarize additional arguments - in addition to those previously briefed - which it intends to raise on appeal in response to the Court's decision. In the Second Memorandum Decision the Court relied upon the holding of the Ninth Circuit in In re 1441 Veteran Street Co., 144 F.3d 1288 (9th Cir. 1998) and In re Veeco Inv. Co., 170 B.R. 149 (Bankr. E.D. Mo. 1994).  The Debtor believes that both decisions are inapposite to the present dispute as both decisions involved post-petition rents rather than proceeds. As the Court noted in the Second Memorandum Decision, the "majority view" is that an undersecured creditor with a prepetition lien on rents is entitled to assert a lien on post-

In re Richardson, 15 B.R. 930, 931 (Bankr. E.D. Pa. 1981)." In re Edwards, 228 B.R. 573, 574-76 (Bankr. E.D. Pa. 1999). *See also* Matter of Forty-Eight Insulations, Inc., 115 F.3d 1294, 1300 (7th Cir. 1997), (once threshold showing is made on the first two factors, the court balances all four factors to determine whether to impose a stay.)  In fact, in Yeganeh, the District Court raised, but did not address, the issue because the appellant there failed to meet its burden under either approach.

Case: 04-41044   Doc# 587   Filed: 07/18/06   Entered: 07/18/06 09:16:27   Page 5 of 11

petition rents, notwithstanding that the result is that the creditors' pre-petition secured claim will increase in amount post-petition. However, the 1441 Veteran Street case, as well as the Veeco case, involved post-petition rents, rather than the proceeds of pre-petition accounts receivable. Bankruptcy Code Section 552 expressly provides that a pre-petition lien on rents extends to post-petition rents. The sole issue in the 1441 Veteran Street case was whether the pre-petition secured claim would increase as post-petition rents were generated, not whether the post-petition rents were collateral. There was no dispute that the post-petition rents automatically became collateral for the pre-petition debt due to the express language of Bankruptcy Section 552(b)(2). The dispute in 1441 Veteran Street involved the interpretation of Bankruptcy Code Section 506 as it intersects with Section 552(b)(2). In 1441 Veteran Street the Debtor argued that the lender's secured claim was essentially frozen on the petition date pursuant to Bankruptcy Code Section 506(b). Notwithstanding that Section 552(b)(2) provides that rents arising post-petition constitute additional collateral for pre-petition debt where the creditor holds an "assignment of rents." The Ninth Circuit rejected that contention, relying in large part upon the holding of the Supreme Court in Dewsnup v. Timm, 502 U.S. 410 (1992) for the proposition that a lender is entitled to the benefit of any post-petition increase in the value of the creditor's pre-petition collateral. By contrast. in the present case, the issue is not whether the pre-petition secured claim can ever increase in amount, due to the increase in the value of the pre-petition collateral, but whether the Lenders' pre-petition lien encumbers the Debtor's accounts receivable generated post-petition..[2] It is indisputable that Bankruptcy Code Section 552(b)(1) provides that a pre-petition lien on accounts extends only to those accounts receivable and the "cash collected on

_____

[2] In the Memorandum Decision, the Court stated that the case which it believed was "most closely on point as a factual matter" is In re Machinery, Inc., 287 B.R. 755 (Bankr. S.D. Mo. 2002). In fact, the Debtor believes that the Machinery case is not on point and that the discussion in that case repeatedly confuses rents with proceeds, in part because the "proceeds" at issue in that case were rents from equipment. Such rents received from the rental of personal property collateral are now deemed to be "proceeds" under the Uniform Commercial Code, and therefore under can arise post-petition like real property rents unlike the proceeds from the collection of pre-petition accounts receivable. Thus, In fact, every decision cited by the Machinery court in support of its position, including Veeco, involved real property rents.

Case: 04-41044   Doc# 587   Filed: 07/18/06   Entered: 07/18/06 09:16:27   Page 6 of 11

existing pre-petition accounts," and does not extend to accounts arising post-petition. In re Skagit Pacific Corporation, 316 B.R. 330, 336 (Bankr. 9th Cir. 2004) ("receivables generated by the debtor after filing bankruptcy petition are in no way proceeds of pre-petition accounts receivable" and "revenue generated by the operation of a debtor's business post-petition, is not considered proceeds if such revenue represents compensation for goods and services rendered by the debtor in its everyday business performance.") Unlike the debtor in 1441 Veteran Street, the Debtor here is not contending that the secured creditors' claims are frozen as of the petition date under Section 506(a); the Debtor is contending that - consistent with Skagit - the "identifiable cash proceeds" of pre-petition receivables which can be traced by the secured creditors is limited to the "cash collected on existing pre-petition accounts receivables," and cannot increase as new receivables are generated post-petition as "compensation for goods and services rendered by the debtor in its everyday business performance."

The Debtor appreciates that the Court and the Debtor have simply have come to different conclusions regarding the application of the law to the present facts. However, the Debtor submits that the its position has substantial merit, that there is no binding authority in the Ninth Circuit which directly addresses the issues which will be decided on appeal, and that under the circumstances such a showing satisfies the requirement that there be a substantial likelihood of success on the merits.

**B. The Debtor is Likely to Suffer Substantial Irreparable Injury Without A Stay**

The Debtor is seeking the imposition of a stay to secure the disputed funds because it fears that if it prevails on appeal the Lenders will have no ability to restore the disputed funds. Burlingame Funding, the holder of the senior debt, is a wholly-owned subsidiary of Burlingame Capital, and has no assets other than the senior debt. Burlingame Capital is a small fund which made a handful of loans several years ago, several of which are in default. It appears to have less cash on hand than is at issue in the appeal, and has outstanding obligations in excess of its cash on hand. In the course of discovery in the adversary proceeding (Adv. No. 04-4189) being prosecuted by the Committee Robert Judson of Burlingame Capial testified that, as of October,

2005, Burlingame Capital had approximately $700,000 in cash, and paid management fees of approximately $500,000 per year.[3]   On December 21, 2005, Janice Judson testified that she did not know if Burlingame Capital had more than $500,000 in cash on hand, although it "probably" had more than $50,000 in cash on hand at that time[4] Since that time, the Lenders have submitted to this Court, as exhibits, copies of legal invoices which indicate that they apparently owed more than $1,329,112 to their lawyers as of March 31, 2006, just in connection with the Qmect matter.[5]It can be safely assumed that the legal bills incurred in connection with the Qmect matter since March 31, 2006 have also been substantial.  While the amounts outstanding from prior bills were redacted from several of the bills in question, it would seem reasonable to assume that such information was redacted only because such bills had not been paid by Lenders.  Moreover, the Debtor understands that Burlingame Capital is presently in trial in Santa Clara Superior Court in a case in which Burlingame Capital is being sued for fraud and misrepresentation.[6]

The Court will recall that the funds which are held by the Lenders' counsel are in a trust account specifically because the Debtor raised with the Court its concern that the Lenders would not be able to return the funds if they had been improperly paid to the Lenders in light of the Lenders' thin capitalization.  Given that the Lenders apparently have far more current liabilities than current assets, that concern is even greater today.  In the absence of a stay, the Debtor will

---

[3] See, Deposition of Robert D. Judson, Jr., dated November 22, 2005, page 338, line 22 - page 340, line 9 attached as Exhibit A to the Declaration of Philip J. Nicholsen (the "Nicholsen Dec") submitted herewith.

[4] See, Deposition of Janice Judson dated December 21, 2005, page 231, line 1 - page 231, line 7, attached to the Nicholsen Dec as Exhibit B.

[5]See, Declaration of Paul E. Manasian, submitted herewith, and Secured Lenders' Preliminary Exhibit List dated May 5, 2006, with respect to the hearing with respect to relief from the automatic stay scheduled for May 24, 2006, Binder One, Exhibit 11, attached as Exhibit A thereto.

[6] The principals of Burlingame are also defendants in a state court action being prosecuted by the Debtor which is set for trial in April, 2007.  The Debtor believes, though does not know, that the legal fees in defense of that action are likely being paid or assumed by Burlingame as well.

Page 8

be at direct risk that the Lenders will dissipate the disputed funds and should the Debtor prevail on appeal it will be forced to engage in a collection effort from an illiquid and potentially insolvent entity.[7]

### C. Granting A Stay Will Not Harm the Lenders

The imposition of the proposed stay pending appeal will not harm the Lenders. The Lenders will be (and have been) free to foreclose on all of their pre-petition collateral, and the state court receiver appointed at the Lenders' request has been permitted to use all of the inventory and receivables acquired and generated post-petition. Given that the funds which the stay would preserve are the amounts which have accrued post-petition over and above the amounts which existed on the Petition Date, the Lenders would actually be in the same or better position than they occupied at the commencement of the case. The Court will recall that this case was commenced in response to a threatened foreclosure by the Lenders. On February 27, 2004, Petition Date and the date of the threatened sale, the Debtor had just $34,000 in cash, an unpaid payroll of approximately $91,000, and no workers' compensation insurance. Had this case not been filed, the Lenders would have had to provide an immediate cash infusion to continue the Debtor's operations. Once the case was filed, the Lenders sought relief from stay on an expedited basis and assured the Court that they were prepared to take over the Debtor's operations - and had been prepared to do so had the case not been filed - notwithstanding that the Debtor had virtually no cash. Clearly, the lack of any cash was no obstacle to foreclosure at that time. More recently, in a telephonic hearing on June 5, 2006 counsel for the Lenders requested that the Court enter an order requiring the segregation of the $737,944 in disputed in order to allow the Lenders to proceed with foreclosure on the other assets while the Court was considering the most recent round of briefing. Again, the failure to have access to the disputed cash was clearly not an

---

[7] Although the Debtor believes that it will be at significant peril if the Court does not grant the requested stay for the reasons discussed above, should the Court not grant the stay, the appeal would not be mooted by the Lenders' foreclosure upon the disputed funds, as it would be possible for the Court to fashion an appropriate remedy if the Final Order is reversed on appeal simply by requiring the Lenders' to pay the estate the amount of the disputed funds with accrued interest.

Case: 04-41044   Doc# 587   Filed: 07/18/06   Entered: 07/18/06 09:16:27   Page 9 of 11

impediment to the Lenders' foreclosure as recently as last month.

The Lenders will not be at any risk if the disputed funds are held in an interest-bearing account pending resolution of the appeal. The Lenders' conduct prior to the commencement of the case, their testimony immediately after the filing of the petition, and their stated position in the most recent hearing in the case, all demonstrated that they can proceed to foreclosure and operate the business without the disputed cash. Accordingly, there is no risk of harm to the Lenders by the grant of a stay which simply requires that the cash in disputed be set aside pending resolution of the appeal.[8]

### D. The Stay Will Do No Harm to the Public Interest

Given that the order being appealed from, and the issues on appeal, involve a commercial dispute between private parties, there is virtually no public interest in the dispute. Granting the stay will not harm any public interest, but will serve the general public interest in assuring that the complex and important legal issues in dispute are resolved for the benefit of future litigants, and that the funds at issue are received by the proper parties only after a full and complete resolution on appeal.

### IV. CONCLUSION

The issues which will be decided on appeal are both complex and important. The Debtor submits that the preservation of the status quo with respect to the disputed funds during the pendency of the appeal is just and equitable to all parties and respectfully requests that the Court stay the Final Order with respect to the $345,885.31 funds held by the Lenders' counsel and $392,902 in funds held by the state court receiver.

///

///

---

[8]To the extent that the Lenders argue that they in fact need the cash to operate the business, the Debtor submits that such an assertion demonstrates that the Lenders lack the liquid resources to restore the money if the Debtor prevails on appeal.

MPA SUPPORTING MOTION FOR STAY PENDING APPEAL

Dated: July 17, 2006              MANASIAN & ROUGEAU LLP


                              *Paul E. Manasian*
                          Attorneys for Debtor in Possession, QMECT, INC.

\\Gradl\m&r\Electrochem\Pleadings\Reply Proceeds Issue\Appeal\MPA Stay Pending Appeal Final.wpd

MPA SUPPORTING MOTION FOR STAY PENDING APPEAL