**Signed: January 19, 2007**



_____
**LESLIE TCHAIKOVSKY
U.S. Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re                                    No. 04-41044 TK
                                         Chapter 7
QMECT, INC.,

          Debtor.
_____/

**MEMORANDUM OF DECISION RE APPLICATION FOR APPROVAL OF COMPROMISE**

    The application for approval of a proposed compromise between John T. Kendall (the "Kendall"), the interim chapter 7 trustee, and Burlingame Capital Partners II, L.P. and related individuals and entities (collectively "Burlingame") came on for hearing on January 12, 2007. Appearances were stated on the record. At the conclusion of the hearing, the Court took the matter under submission. Having fully considered the application, the Court concludes that it should be denied. The reasons for the Court's decision are set forth below.

**DISCUSSION**

    The above-captioned case was filed in February 2004 as a chapter 11 case. The case was converted to chapter 7 on October 6, 2006, and Kendall was appointed as interim trustee. On October 29, 2006, Kendall filed a notice of possible dividends. A few days later he

applied to retain counsel. On November 28, 2006, Kendall filed an application for approval of a global compromise with Burlingame for $100,000 plus 2% of the net proceeds of certain litigation against a corporation owned by the principal shareholders of the Debtor (the "Kids' Connection Litigation").

Kendall contends that the compromise is fair and reasonable. He argues that, if the claims were litigated, it is far from certain that the estate would obtain a judgment for a higher amount. He notes that the estate was unsuccessful in most of the claims asserted against Burlingame in the bankruptcy court. He states that it is difficult to estimate what the "full upside to the estate" would be if the estate prevailed on all of the claims being litigated. However, he speculates that the attorneys' fees incurred might be so substantial that, even if the estate did prevail, there might be no net monetary recovery for the estate. He notes that the estate's litigation costs during the chapter 11 were between $1 and 2 million.

Kendall observes that efforts to settle the various disputes between the parties during the chapter 11 failed. He asserts that the legal issues they present are unusually complex. Appeals and cross-appeals of some of the Court's rulings are pending before the district court. Based on past history, he states, it is reasonable to anticipate that appeals would be taken from any district court decisions as well. Thus, it might be years before the litigation was concluded. For these reasons, Kendall contends, the interests of creditors are better served by the compromise.

An objection to the proposed compromise was filed by Brian Fitzpatrick ("Fitzpatrick"), who loaned $200,000 to the Debtor during the chapter 11 case and obtained a superpriority chapter 11 administrative claim, among other things. It is undisputed that, if the compromise is approved, the $100,000 would be sufficient only to pay the chapter 7 administrative expenses and a portion of Fitzpatrick's claim.

Objections were also filed by three attorneys with actual or potential chapter 11 administrative claims: i.e., Paul Manasian ("Manasian"), the Debtor's bankruptcy attorney, Philip Nicholsen ("Nicholsen"), the Creditors' Committee attorney, and Kirk Freeman ("Freeman"), the Debtor's special state court litigation counsel. Objections were also filed two actual or potential general, unsecured creditors: i.e., Siegler Law Group, ("Siegler"), a general, unsecured creditor, and Frank Nagy ("Nagy"). Absent a substantial recovery on the Kids' Connection Litigation, the nonsuperpriority administrative creditors and the general, unsecured creditors will receive no distribution if the compromise is approved.[1]

The objecting creditors argue that the proposed settlement is not in the best interests of the estate. They contend that the settlement amount is substantially too low. They observe that there are attorneys who are willing to handle the litigation on a contingent fee basis. Therefore, they urge the Court not to approve

---

[1] The only creditor supporting the proposed settlement is Burlingame, whose bias in this matter makes its support irrelevant.

3

the proposed compromise. They argue that Kendall has not adequately evaluated the merits of the various pieces of litigation.

The leading case setting forth the standards for approval of a proposed compromise is <u>In re A & C Properties</u>, 784 F.2d 1377 (9th Cir. 1986). The <u>A & C Properties</u> court held that, in determining whether to approve a proposed compromise, the court must consider: "(a) the probability of success in the litigation, (b) the difficulties, if any to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises." <u>Id.</u> at 1381.[2]

Kendall's application addressed only the first and third of these factors. He expressed no opinion on the difficulty of collecting any judgment obtained by the estate against Burlingame. He did not adequately address the paramount interest of the creditors. He asserted that the proposed settlement would be in the best interests of the estate but did not explain how he reached that conclusion. In the Court's view, the primary interest that would be served is Kendall's in that it would permit him to close the estate

---

[2]Kendall suggests that, if the objecting creditors believe that the settlement amount is too low, they should offer the estate more for the claims. <u>See</u> <u>In re Mickey Thompson Entertainment Group, Inc.</u>, 292 B.R. 415, 421 (Bankr. 9th Cir. 2003)(when third party offers to purchase claims proposed to be compromised for more than the compromise amount, proposed compromise should be analyzed as a sale as well as a compromise). However, the <u>Mickey Thompson</u> court made it clear that not every compromise of controversy must be analyzed as a sale. <u>See id.</u> at 422 n.7.

4

promptly. Moreover, the Court agrees that Kendall's review of the litigation proposed to be settled was necessarily cursory given its complexity and the short time that elapsed between his appointment and his decision to enter into the compromise.[3]

The Court agrees with Kendall that the Debtor has an uphill battle in prevailing on any of the litigation, that the issues are numerous and complex, and that proceeding with the litigation will likely result in a substantial delay in administering the case. However, the Court does not believe that the Debtor's chances of prevailing on some or all of its claims are negligible. In view of the amounts of the claims, the proposed settlement amount would be appropriate only if the Court viewed the Debtor's chances of success as negligible.

Given the availability of counsel willing to handle the litigation on a contingent fee basis, the expense to the estate of continuing the litigation does not weigh heavily in the Court's consideration. Of greater weight is the unanimous opposition to the settlement by creditors at various levels of priority, above all Fitzpatrick, who would receive some payment if the compromise is approved. The Court is unable to find that it would be in the best

---

[3]As noted above, Kendall was appointed on October 6, 2006. Although he did not file his application for approval of the proposed compromise until November 28, 2006, he filed a notice of possible dividend on October 29, 2006. Since this compromise is the only identifiable source of a possible dividend at present, the Court finds it likely that Kendall had decided to enter into the compromise by that date.

5

interests of the estate to approve a compromise under these circumstances.

## CONCLUSION

Kendall's application for approval of the proposed global settlement with Burlingame will be denied. Manasian is directed to submit a proposed order in accordance with this decision.

END OF DOCUMENT

6

```
 1                         COURT SERVICE LIST
 2   Philip J. Nicholsen
     Law Offices of Philip J. Nicholsen
 3   601 Montgomery St. #777
     San Francisco, CA 94111
 4
 5   Reidun Stromsheim
     Law Offices of Stromsheim and Assoc.
 6   201 California St. #350
     San Francisco, CA 94111
 7
     Paul E. Manasian
 8   Law Offices of Manasian and Rougeau
     400 Montgomery St. #1000
 9   San Francisco, CA 94104

10   Robert R. Moore
     Allen Matkins Leck Gamble
11         Mallory & Natsis LLP
     Three Embarcadero Center, 12th Floor
12   San Francisco, CA 94111-4074

13   Adam Siegler
     Siegler Law Group
14   9454 Wilshire Blvd., Ste. M-16
     Beverly Hills, CA 90212
15
     William C. Lewis
16   Law Offices of William C. Lewis
     510 Waverley St.
17   Palo Alto, CA 94301-2009

18   Kirk B. Freeman
     Law Offices of Kirk B. Freeman
19   214 Grant Ave., Ste. 301
     San Francisco, CA 94108
20
21
22
23
24
25
26
```