REIDUN STRØMSHEIM # 104938
STROMSHEIM & ASSOCIATES
201 California Street, Suite 350
San Francisco, California 94111
Telephone: (415) 989-4100
Fax: (415) 989-2235
rstromsheim@stromsheim.com

Attorneys for Trustee,
JOHN T. KENDALL

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | Case No. 04-41044 TK |
| QMECT, INC.<br>aka Electorochem | Chapter 7 |
| Tax I.D. # 94-2923737 | Date: April 17, 2008<br>Time: 2 p.m.<br>Place: 1300 Clay Street, 2nd Floor<br>Oakland, CA |
| Debtor | |

APPLICATION TO APPROVE COMPROMISE OF CONTROVERSY

TO THE HONORABLE LESLIE TCHAIKOVSKY, UNITED STATES BANKRUPTCY JUDGE:

John T. Kendall ("Trustee"), trustee of the above referenced bankruptcy estate, respectfully requests an order authorizing the compromise entered into with (i) Burlingame Capital Partners II, L.P.; (ii) Electrochem Funding, LLC, (iii) Robert D. Judson, Jr., (iv) Janice H. Judson, (v) Sierra Financial Group, Inc., (vi) Burlingame Capital, LLC, (vii) Burlingame Capital Management, LLC, (viii) The Judson Company, Inc., (ix) Electrochem Solutions, Inc.; and (x) Electrochem Solutions, LLC ("the Burlingame Parties"). By the terms of the compromise the Burlingame Parties will pay to the estate $50,000 in return for full releases of any and all claims the Trustee, the Debtor, and/or the bankruptcy estate may have against them. The compromise is subject to overbids, as set forth below. The compromise refers to the following facts:

Prior to the filing of the Chapter 11 bankruptcy case on 2/27/04, and prior to the conversion of the case to Chapter 7 on 10/6/06, the following lawsuits (the "Actions") were filed by the Debtor and/or the Official Unsecured Creditors' Committee for Qmect, Inc. (the "Creditors' Committee") against the Burlingame Parties and vice versa:

1. *Qmect, Inc., et al. v. Robert D. Judson, Jr. et. al,* Civ. No. 426631, Superior Court of the State of California, San Mateo County ("State Court Action I");
2. *Burlingame Capital Partners II, L.P., et. al. v. Fred Koelling, et al.*, Civ. No. 437511, Superior Court of the State of California, San Mateo County ("State Court Action II");
3. *Qmect, Inc. v. Burlingame Capital Partners II, L.P. et. al*, United States Bankruptcy Court for the Northern District of California, Adv. Pro. No. 04-4190 ("Equitable Subordination Action");
4. *Burlingame Capital Partners II, L.P., et al v. Fred Koelling and Linda Koelling, et al.*, United States Bankruptcy Court for the Northern District of California, Adv. Pro. No. 04-4365 ("Guaranty Action");
5. *Qmect, Inc., et al. v. Robert D. Judson, Jr. et al,* United States Bankruptcy Court for the Northern District of California, Adv. Pro. No. 04-4366 ("Breach of Fiduciary Duty Action");
6. *Official Unsecured Creditors' Committee of QMECT, Inc. v. Burlingame Capital Partners II, L.P. et al.*, United States Bankruptcy Court for the Northern District of California, Adv. Pro. No. 04-4189 ("Committee Lien Avoidance Action"); and
7. *Qmect, Inc. v. Burlingame Capital Partners II, L.P. et. al*, United States Bankruptcy Court for the Northern District of California, Adv. Pro. No. 04-4171 ("Preference Action")

Only two pending legal actions remain unresolved:

(A) The State Court Action, which is comprised of items 1 and 2 above, and where the Trustee obtained a judgment against Sierra Financial and the Judson Company (the successor in interest to Sierra Financial) for unfair business practices, in the sum of $60,000. (The estate lost on

all other causes of action.) With costs and interest the Trustee believes that the current face value of this claim is about $100,000, but the claim may be subject to set-off of awards made to the Burlingame Parties. See Declaration of John T. Kendall ("Kendall Declaration") filed herewith. This award has been appealed; and

(B) An appeal before the Ninth Circuit Court of Appeals of the final order granting Relief from Stay (the "Final Order") to the Burlingame Parties, who have foreclosed their security interests in the Debtor's assets (Appeal No. 07-16726 and cross-appeal No. 07-16776 (the "Ninth Circuit Appeals")). The United States District Court upheld the ruling by the Bankruptcy Court. The funds previously held by the Burlingame Parties' counsel pursuant to the stay pending appeal have been disbursed to the Burlingame Parties.

Actions (3) through (7) have been terminated without any rulings in favor of the estate. The Equitable Subordination Action, the Guaranty Action and Breach of Fiduciary Action were consolidated in AP 04-4190 (the "Consolidated Proceedings") and in a Decision After Trial in Consolidated Proceedings entered on February 9, 2006, the Court ruled against the Debtor. The Decision was turned into a final judgment, entered on August 14, 2006, and has not been appealed by the Debtor or the Trustee. In the Creditor Committee Action, Defendant was granted a Judgment on the Pleadings, and the Trustee agreed to sign a Stipulation for Dismissal With Prejudice. The Preference Action was litigated extensively by the estate. The Trustee responded to several motions for summary judgment in the preference action and was making significant headway into the opponent's legal theories when defendants came up with a new argument that won the day, and obtained a Summary Judgment that the estate had no claim for avoidance of any preference, as there was no "improvement in position" of the claim of the Burlingame Parties in the 90 days prior to the bankruptcy petition date because the debt had increased in an amount greater than the applicable types of collateral had increased..

**OVERBID PROCEDURE**

Any one may make an offer to purchase the estate's remaining claims, which consist of items (A) and (B) above, plus a possible claim by the estate against the Burlingame Parties to determine the extent and validity of the security interest of the Burlingame Parties, pursuant to 11

U.S.C. §506, with a claim for an accounting and turnover of the potential overpayment received by the Burlingame Parties.

The crux of the latter claim is that Burlingame may have been overpaid by receiving all of the cash accumulated during the Chapter 11 operations. In order to succeed, any plaintiff must obtain a judgment that the secured claim of the Burlingame Parties against cash and accounts receivable, measured as of the date of the bankruptcy filing, was limited thereafter to a replacement lien for that fixed value, and did not attach to the increase in value of the Debtor's cash and accounts receivable assets during the Chapter 11, i.e., the additional "Enterprise Value" created before the foreclosure, and therefore that such plaintiff is entitled to recover the excess Enterprise Value from the defendants. The possible value of this claim could be about $740,000, which amount includes the estate's claim based on accumulated "Adequate Protection Payments" in the sum of about $350,000, that had been made by the Debtor to the trust account of counsel for the Burlingame Parties during the Chapter 11. The Burlingame Parties have contended that (i) all of the cash and accounts receivable "Enterprise Value" are proceeds of prepetition collateral and therefore are subject to their prepetition security interest not dependent upon any replacement lien; and (ii) the Adequate Protection Payments and replacement lien monies will be consumed in any event because they must compensate for the overall decline in value of all kinds of the Burlingame Parties' collateral, including real property and going concern value of the business.[1]

Overbids will be held at the above stated date, time and place, immediately before the hearing set for the approval of the compromise. In order to participate in the overbid, an interested party must pay the entire overbid sum in a two step process: First, by making an initial qualification payment in the sum of $10,000 by cashier's check made payable to John Kendall, Trustee, no later than five (5) business days prior to the hearing; and Second, if there is at least one qualified overbid, the overbids will go forward, and each such offeror[s] must complete the

---

[1] The foregoing description is a summary only, of complex concepts. For full details consult the Relief from Stay proceedings throughout the main Case, the Preference Action (p. 2 item 7), and the Ninth Circuit cross-appeals (p. 3 item B), including orders and opinions entered therein.

second part of the qualification by paying the balance of the entire overbid (i.e. no less than and <u>additional</u> $45,000) in a cashier's check or other cash equivalent, made payable to John T. Kendall, Trustee, and delivered to the Trustee at the time of the hearing. The overbids will thereafter proceed with further increments in the sum of $1,000 (by cashiers check(s)) until the highest and best bid is received. The successful bidder must pay the full amount of the winning bid at the conclusion of the overbid session. Deposits from unsuccessful bidders will be returned at the time of the hearing.

**REASONABLENESS OF SETTLEMENT**

A bankruptcy trustee has wide discretion to settle cases, but the discretion is not limitless. Based upon the factors set forth in *Martin v. Kane*, 784 F.2d 1377, 1381 (9th Cir. 1986), *cert. denied sub nom.*, *Martin v. Robinson*, 107 S.Ct. 189 (1986), the Trustee believes that the compromise reached herein is fair, reasonable and equitable. In every instance, of course, there is the need to compare the terms of the compromise with the likely rewards of litigation." *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424-425, *rehearing denied*, 391 U.S. 909 (l968).

The settlement agreement has been reached after mediation held under the auspices of the 9th Circuit Court of Appeal. Rather than proceeding in the usual order, the Trustee addresses first the question of the paramount interests of the creditors. This review must focus on the question of who are within the likely beneficiaries of not only the settlement, but any theoretical more favorable result. This emphasis is appropriate because there are no longer prospects of limitless recoveries, but instead there is a finite universe of potentials, against which the costs of proceeding further have also become clearer.

(1) The paramount interest of the creditors is better served by the compromise. About 16 months ago the Trustee entered into a compromise with the same parties, whereby $100,000 was to be paid to the estate. Relatively modest fees had been incurred by the estate by that time. The compromise was not approved. Since then, the legal actions pursued by the estate, whether through special counsel or by the Trustee's bankruptcy counsel, have resulted in multiple rulings against the estate. The Trustee's counsel will have incurred fees of about $225,000 by the time this

compromise comes on for hearing, and costs in excess of $7,000. The Trustee has responded to and defeated several motions for summary judgment in the preference action, and was making significant headway into the opponent's legal theories when defendants came up with their new argument: An arguably (final) adjudicated increase of the claim in the 90 days pre-petition from interest accruals and attorney fees exceeded the "improvement in position" that theoretically occurred from the increase in the value of the cash assets. The Court agreed. The fees for this litigation alone exceed $70,000. In the Relief from Stay, the Trustee has pursued the appeal of the Final Order, and the fees incurred in this matter are in excess of $50,000. Special counsel for the Trustee, Mr. Wickersham, has incurred fees in supervising the State Court litigation on behalf of the estate. The Trustee cannot now be accused of having taken the easy way out, which was a charge leveled against the prior settlement.

At the time of the prior settlement, there was a genuine likelihood that the Chapter 11 super-priority claims would receive some money. That likelihood has now vanished whether from settlement (or overbid) proceeds or from a theoretical litigated net result. The Chapter 7 administrative expenses have priority over Chapter 11 expenses, see §726. This includes superpriority claims, see *In re California Devices, Inc.*, 126 B.R. 82, 86 (N,D. CA 1991). The rationale for the carve-out for the "burial expenses" of a trustee is to encourage a subsequent trustee in pursuing the remaining claims and assets of the estate. See *In re Summit Ventures, Inc.* 135 B.R, 478, 483 (Bankr. VT. 1991) citing *In re Codesco,* 18 BR 225 (Bankr. S.D.N.Y. 1982) where the Court held that irrespective of the borrowing order obtained in the Chapter 11 case, the superpriorities of Chapter 7 expenses prevail over Chapter 11 superpriority claims. This proposition was also set forth at length in *In reMcNeil*, 102 B.R. 766, 768 (9th Cir. 1989), which opinion was vacated on procedural grounds, see *In re McNeil,* 907 F.2d 903 (9th Cir. 1990).

In the event that "superpriority" claimant(s) believe that his/their interests come ahead of the Chapter 7 administrative expenses, and that they should be heard once again in opposition to compromise, the facts indicating the reality to be otherwise are as follows. The Debtor obtained an emergency order authorizing borrowing on March 9, 2004, 10 days after the February 27, 2004 Chapter 11 filing of the Debtor (the "Borrowing Motion"). For the resulting Order see Docket No.

26. At the time, the lender had already advanced some money. The Borrowing Motion and proposed order did not provide for a carve-out for a potential Trustee, or for fees and costs for the Trustee's counsel, in violation of the Cash Collateral Guidelines in effect at at the time of the entry of the borrowing order ("Guidelines"), and which provided in pertinent part as follows:

```
All applications for court approval of a cash collateral or
financing stipulation must recite whether the stipulation
contains any provision that the court will not normally
approve, identify any such provision and explain the
justification for the provision.................
```
**B.   Provisions that will normally be approved.**

```
3.    Securing new advances or value diminution with a lien on
      other assets of the estate, but only if the lien is
      subordinated to all  the expenses of administration
      (including professional fees) of a superseding Chapter 7
      case.
```
(Emphasis supplied.)

A copy of the Guidelines is attached to the Kendall Declaration. Because the Borrowing Motion did not recite that the stipulation contained a provision that the court will not normally approve, nor identify the provision and explain the justification for the provision, as required by the Guidelines, this interim borrowing order which granted a super-priority under §364(c)(1) must be deemed modified to provide for the carve-out required by the Guidelines.

Furthermore, the Borrowing Motion was presented on an emergency basis, pursuant to Rule 4001 (b), and required a final hearing not less than 15 days after the bankruptcy filing, see Rule 4001 (b)(2). To the best of the Trustee's investigation, no final order was ever entered authorizing the borrowing. It appears that the later orders only concerned the use of Cash Collateral. Under these circumstances, the order was an interim order, and can therefore be amended by the Court to provide for the Chapter 7 "priming", as was approved in *In re Visionaire Corporation,* 299 B.R. 530, 533-34 (8th Circuit BAP 2003).

The Trustee believes that, given the various risks, the upside to the estate for the continued litigation would be $390,000. Even at this amount, and given the costs of litigation, including the expert fees, there would only be funds for the Chapter 7 administrative claims, to be shared on a pro rata basis. See Kendall Declaration.

(2) if the claims were completely litigated, there is very substantial doubt and risk in the

proposition (which objectors may assert) that the estate would obtain judgment for an amount higher than the settlement amount. The State Court Action was a monumental loss, and the judgment that was obtained is but a Pyrrhic victory. Special counsel who litigated the State Court Action conducted an examination of the judgment debtor, and has found that the Judson Company has no assets. The company was a personal services company that employed Mr. and Mrs. Judson, and the company is no longer in business. See Kendall Declaration.

The Trustee has both investigated and litigated the issues relating to the extent and validity of the lien of the Burlingame Parties. In the Preference Action, there was some indication that the Bankruptcy Court had changed its view of the Burlingame Parties' "proceeds" argument, notwithstanding the District Court's appellate ruling, which could affect the interpretation of 11 U.S.C. §552 in the Relief from Stay appeals and the potential Section 506 action concerning postpetition assets. However, regarding the Burlingame Parties' other argument, attached as examples to the Kendall Declaration are Exhibits consisting of a *Memorandum of Decision re Cash Collateral Motion* entered December 23, 2005 (Docket #451) and an *Order Authorizing Debtor's Continued Use of Cash Collateral* entered January 30, 2006 (Docket #461). These examples concern the nature of the payments made by the Debtor into the attorney trust account and the nature of the adequate protection liens that were granted. The Trustee ascribes substantial risk to the wording of such memoranda and orders, particularly as to the approximately $350,000 in payments made into the attorney trust account. With respect to the estate's claim to the balance of the Enterprise Value, i.e., about $390,000, the Trustee believes that the claim is considerably better, as a theoretical legal proposition, but the claim will face a massive series of adverse rulings against the Debtor, throughout the entire bankruptcy case. These rulings increase the complexity of the claim. The Trustee's principal legal argument is that §552 of the Bankruptcy Code limits the replaced secured claim amount to the cash collateral that existed at the time of the bankruptcy filing. The Trustee believes that the replacement lien granted to the Burlingame Parties cannot result in an improved secured position as a result of newly-generated assets, even though this position was initially rejected by the Bankruptcy Court and the District Court. The Ninth Circuit case relied upon by both courts in ruling against the Debtor and the Trustee is *In re 1441 Veteran*

1 *Street Co.*, 144 F.3d 1288 (1998).[2] This, however, was a rents case under the prior version of 11 U.S.C. §552(b). The Trustee believes that the rents cases are different from the present case, which concerns new personal property that was created through personal services, together with a mixture of assets, some but not all of which were covered by the security interest of the Burlingame Parties. See Kendall Declaration. The Trustee understands that even if the entirety of the Burlingame Parties' collateral on a going-concern basis would be the issue for decision, the estate could nevertheless prevail. However, this is necessarily an intensively factual determination.

(3) Litigation would result in additional expenses and inconvenience to the estate. Prosecution of the claim would require payments to expert witnesses for the Trustee in order to prove the amount at stake, a cost that the Trustee believes would not be less than $100,000 and could easily be more. The Trustee would also have to pay to depose the expert of the defendants, which would easily cost in the tens of thousand of dollars. The estate has no money from which to pay such expenses. The attorney fees that would be incurred in the pursuit of the lawsuit would also be high, and could easily exceed $70-80,000. The lawsuit would come on the heels of more than four years of intense, costly and bitter litigation, with attorney fees on both sides exceeding $5 million.

Should a new lawsuit go forward, it is anticipated that it would be met with overwhelming resistance, and the Trustee does not believe that such a lawsuit is cost effective.

(4) The Trustee believes that collection from the Defendants would not be unreasonably difficult, with the exception for the collection against the Judson Company for the State Court judgment, which company is judgment proof.

//

//

---

[2] The principal case relied upon in the Preference Action by the Burlingame Parties, regarding which the Bankruptcy Court expressed a change of mind that would affect the Section 552 issue, is *In re Castletons*, 990 F.2d 551 (10th Cir. 1993).

//

WHEREFORE, the Trustee respectfully requests that an order be entered approving the compromise entered into with the Burlingame Parties.

DATED: This 28th day of March, 2008.

STROMSHEIM & ASSOCIATES

/s/ Reidun Strømsheim
Attorneys for Plaintiff,
JOHN T. KENDALL, Trustee